## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TERRY ANN BOND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-1134 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits, Plaintiff Terry Ann Bond filed a Motion for Summary Judgment [Doc. # 12]. Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, filed a Response [Doc. # 13] requesting affirmance of the Commissioner's denial of benefits. The motions now are ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that summary judgment should be **granted** for Plaintiff and that this case should be remanded to the Commissioner for further proceedings.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff filed an application for disability benefits with the Social Security Administration ("SSA") on March 14, 2012, alleging disability beginning on May 23, 2011.  After the claim was denied initially and on reconsideration, Bond requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the denial of benefits.

On April 29, 2013, ALJ John D. Sullivan held a hearing in Houston, Texas.  R. 44-72.  A vocational expert appeared and testified.  Bond was represented by counsel. On August 12, 2013, the ALJ issued a decision finding that Bond was not disabled during the relevant period.  R. 25-43.

On February 27, 2014, the Appeals Council denied Plaintiff's request for review.  R. 1-6.  Bond filed this case on April 23, 2014, seeking judicial review of the Commissioner's denial of her claim for benefits.  Complaint [Doc. # 1].

### B.   Factual Background

Bond alleges disability based on chronic obstructive pulmonary disease ("COPD"), coronary artery disease, diabetes mellitus, peripheral vascular disease, sleep apnea, and obesity.   The relevant period for Bond's application for benefits is from May 23, 2011 (her alleged onset date) through August 12, 2013 (the date of the

ALJ's decision).

The complete record before this Court was not before the ALJ at the time he made his decision.  The ALJ recited all exhibits he was admitting, which included the medical records in Exhibits 1F through 14F.  R. 47.  He noted the importance of some records that were missing, and stated that he would hold the record open for fourteen days to receive further medical evidence.  R. 61-62.  Plaintiff did not submit any records within the fourteen-day period.  However, after the ALJ's denial of benefits, Plaintiff, represented by new counsel, submitted additional evidence to the Appeals Council, including extensive medical records from Willowbrook Methodist Hospital from May and June 2011.  *See* R. 5 (reflecting submission of Exhibits 15F and 16F to Appeals Council).  In addition, Plaintiff' submitted a brief to the Appeals Council on December 30, 2013, which attached additional medical evidence from the relevant period, as well as opinions from two of Bond's treating physicians.  *See* R. 215-294 (brief attaching, *inter alia*, opinions from cardiologist Sanjay Kunapuli, M.D., and primary care physician Anupam K. Sidhu, M.D.) (Exhibit 14E).

The record before the ALJ showed that on May 23, 2011, at the beginning of the relevant period, Bond was hospitalized for heart failure.  She was treated by Dr. Kunapuli, her cardiologist, among other doctors.  Over her ten-day hospitalization, she had multiple medical procedures including double bypass surgery on May 25.  After

her discharge, Bond began treatment with Dr. Sidhu, her primary care physician.  R.

335-336.  As noted by the ALJ, her medical records from Dr. Sidhu reflect that she

did well after the bypass surgery, with normal blood pressure, normal heart rhythm,

and no acute distress.  *See* R. 31 (citing records from examinations in June, August,

and November of 2011).

After her bypass surgery, Bond suffered from numbness and paralysis in her left

hand and shoulder because her hand had been constrained for four hours during the

surgery.  R. 31; *see* R. 515-544 (records of Fondon Orthopedic Group) (Exhibit 10F).

On July 13, 2011, Bond reported that immediately after surgery she had complete

numbness in all fingers of her left hand, that she since had some improvement in some

fingers,  but that she had "very minimal" improvement in her ring and small fingers.

R. 531.  She was assessed with lower brachial plexus paralysis and was referred to

therapy.  R. 530.  At an initial occupational therapy evaluation on July 15, 2011, Bond

reported pain and decreased strength and range of motion in her left shoulder and

hand, as well as difficulty with personal hygiene, dressing, cooking, driving, lifting

household objects, opening doorknobs, and other common tasks.  R. 541.  After

regularly attending therapy appointments Bond was significantly improved in

September, but still was unable to fully make a fist, particularly with her small and

ring fingers.  R. 522.  By November, approximately six months after her surgery, she

reported continued improvement, including in extension of all fingers, although she still had decreased sensation in her small finger.  R. 517.

On January 12, 2012, Bond had a cardiac catheterization that revealed high-grade stenosis, or blockage, in her right coronary artery.   Dr. Kunapuli performed additional surgery for stent placement, which was successful.  R. 31 (citing R. 408).[1] On February 20, 2012, Bond had an office visit with Dr. Sidhu.  R. 320-322.  She was asymptomatic and her cardiovascular examination was normal.

On May 15, 2012 Bond presented at Methodist Willowbrook Hospital and complained of shortness of breath and edema.  R. 31.  *See* R. 364-423 (Exhibit 5F).  She was diagnosed with acute decompensated heart failure secondary to systolic congestive heart failure.  R. 399.  Because of occult blood in the stool, doctors performed a colonoscopy which revealed a large tumor obstructing the rectosigmoid region.  *Id*.  Bond had emergency bowel obstruction surgery to remove the tumor.  R. 425-477 (Exhibit 7F).  She was discharged two weeks later, on May 29, 2012.  R. 399.  Bond subsequently was treated by Zehra Kapadia, M.D., at Texas Oncology, and received chemotherapy through December 2012.  *See* R. 347-363 (Exhibit 4F); R.

---

[1]       Although not before the ALJ, additional records submitted by Plaintiff to the Appeals Council reflect that on December 21, 2011, Dr. Kunapuli had seen Bond and stated that she "continue[d] to be symptomatic despite optimal medical therapy."  R. 271. Bond then was hospitalized for unstable angina and other conditions from January 12-14, 2012, at which time Dr. Kunapuli performed surgery.  R. 268-286.

554; R. 562.

In July 2012, Bond had a cardiac stress test that suggested stress-induced ischemia, *i.e.*, artery blockage. R. 31.  *See* R. 365-398 (Exhibit 5F).   Dr. Kunapuli stated that Bond had been experiencing shortness or breath, dyspnea on exertion, and worsening lower extremity edema despite having been "maximized on medical therapy." R. 370.  He performed an additional angiography, catheterization, and stent placement.  R. 365.  As noted by the ALJ, Bond did well during these procedures.

At her examination by Dr. Sidhu on September 13, 2012, Bond reported that she was undergoing a six-month course of chemotherapy.  R. 554-557.  As stated by the ALJ, no cardiac symptoms were noted and she had no edema in her extremities. Similarly, on December 13, 2012, Bond stated she was still undergoing chemotherapy; no cardiac symptoms were recorded.  R. 558-561.  However, on December 16, 2012, Bond again presented at Methodist Willowbrook hospital complaining of shortness of breath, fever, chills, nausea and vomiting. She was diagnosed with acute coronary syndrome.  R. 573; R. 610-691 (Exhibit 12F).  Bond again underwent catheterization and doctors found stenosis in her right coronary artery, leading to performance of an additional angioplasty.  R. 613-614.  At an office visit on March 13, 2013, Dr. Sidhu noted no cardiovascular symptoms.  R. 562-565.

The ALJ also reviewed records from 2011 through 2013 pertaining to Bond's

diabetes, noting that she was compliant with medications, that her neurological examinations and range of motion was normal, and that her diabetes was uncomplicated.  R. 31-32 (citing record).  He also reviewed records pertaining to Bond's diagnoses of sleep apnea, COPD, and obesity.  R. 32 (citing record).

At the administrative hearing on April 29, 2013,  Bond testified that she had stopped working full time in May 2011 because of her multiple heart attacks, congestive heart failure, and bypass surgery.  R. 49.  She stated that she had not improved since May 2011 and had been in the hospital for heart problems about every six months, in addition to her hospitalization and surgery for colon cancer. R. 49.  She testified that after her tumor was removed in May 2012, she started a six-month course of chemotherapy, but was taken off of the treatment because of her heart problems. R. 54.  She also testified that her doctors had removed all the cancer but checked her every three months, and that she did not have full control of her bowels and had "accidents" two or three times per week.  R. 55-56.

As for her activities of daily living, Bond testified that she lived with her brother and that he helped her get into the shower and  wash her hair.  She stated that her brother did all the mopping, sweeping, and vacuuming because the cardiologist had told her not to.  R. 57-58.  She testified that she occasionally went grocery shopping and could drive short distances, but that she lacked good grip in her left hand

so couldn't always feel the steering wheel.  R. 58.  Bond stated that her ring and little

fingers on her left hand still lacked full feeling due to brachial nerve damage.  R. 60.

She also testified that she could only sit for about thirty minutes without moving

around because her legs would go to sleep and she then had trouble getting up.  R. 57.


The ALJ issued his opinion denying benefits on August 12, 2013, based on his

determination that Bond was capable of performing her past relevant work as a travel

agent in the 2011-2013 period.   He found that Bond was capable of performing

sedentary work, although he stated that she needed to avoid fumes, odors, temperature

extremes, and other environmental conditions, and further that she was limited to "no

more than occasional use of the ring finger and the little finger on the left non-

dominant hand."  R. 34.   In so holding, the ALJ concluded that Bond's statements

concerning the intensity, persistence and limiting effects of her symptoms were "not

entirely credible" because, based on the totality of the evidence, they were

"inconsistent with the objective medical evidence."  R. 35 (citing *Johnson v. Heckler*,

767 F.2d 180 (5th Cir. 1985)).  He stated, "[w]hile there is no doubt that the claimant

has some pain and discomfort associated with her condition, such symptoms are found

to be mild to moderate at most," R. 35, and that Bond's "actual daily activities reveal

a significant[ly] greater functional ability than alleged."  R. 36.  He further opined that

Bond's cardiac surgeries indicated that her symptoms were genuine, but that her cardiac procedures generally were successful, and that occupational therapy and medication had successfully controlled her other medical conditions.  R. 37.

In his denial of benefits, the ALJ specifically noted that "No treating physician has expressed an opinion regarding [Bond's] ability to perform work related functions" during the relevant period.  R 38.  In addition, the ALJ specifically rejected the hypothetical posed by Plaintiff's counsel involving a worker who required a break from sitting every thirty minutes; or who required bathroom breaks seven or eight times per day due to colon problems; or who would have to leave work two times per week due to accidents caused by colon issues.  R. 38.  He stated that these hypothetical restrictions were "not supported by the record."  R. 38.

Plaintiff filed a request for review with the Appeals Council.  On December 13, 2013, represented by new counsel, she submitted a brief to the Appeals Council with additional evidence attached.  R. 215-294 (Exhibit 14E). This submission included statements from Dr. Sidhu and Dr. Kunapuli.[2]

The statement from Dr. Sidhu, Bond's primary care physician who had treated her since June 2011, was dated December 27, 2013 and was made by completing a

---

[2]     The submission also included additional medical records from Dr. Kunapuli pertaining to 2011 and 2012.

form with questions regarding Bond's condition.  R. 292-294.  Dr. Sidhu stated that in an eight-hour workday Bond could walk one hour, stand one hour, and sit two hours.  He listed the medical conditions supporting his assessment as coronary artery disease, cardiac surgery, brachial nerve damage, heart failure, diabetes mellitus, hypertension, ischemic cardiomyopathy, mitral regurgitation, chronic fatigue, a history of colon cancer, chronic shortness of breath, loss of grip in the left hand, and urinary frequency.  He opined that, based on her chronic medical conditions and her lack of strength when physically examined, Bond had a limited ability to reach, handle, finger, or feel in her left hand.  He stated that her impairments were reasonably consistent with her symptoms and limitations, that her pain and symptoms were severe enough to "frequently" interfere with her attention and concentration at work, and that she was capable of only low stress jobs.  He opined that she required seven rest breaks during an eight-hour workday, lasting ten minutes each, due to back pain, hip pain, incontinence, and the need to minimize stress due to her heart condition.

Counsel also submitted a December 2013 letter from Dr. Kunapuli, Bond's cardiologist, who had treated Bond since May 2011.  R. 290-291.  Dr. Kunapuli listed Bond's hospitalizations and cardiac procedures in May 2011 (coronary artery bypass grafting), September 2011 (echocardiogram for shortness of breath), December 2011 (positive stress test), January 2012 (catheterization and stent placement), July 2012

(positive stress test and additional catheterization and stent placement), December 2012 (additional catheterization and angioplasty), and June 2013 (transesophageal echocardiogram).  He stated that Bond was treated under his care for coronary artery disease, angina pectoris, coronary artery bypass grafting, ischemia cardiomyopathy, congestive heart failure, mitral valve regurgitation, pulmonary hypertension, hyperlipidemia, hypertension, and obesity; he further stated that she also was treated for diabetes and anemia, and that she was being monitored after having surgery and chemotherapy for colon cancer.  Dr. Kunapuli stated,

> Having known Ms. Bond since 05/2011, I can attest that overall, her condition has gradually declined.  Having undergone open heart surgery, multiple coronary angioplasties, and colon cancer, she has taken a toll. In my opinion, she is not capable of returning to work.  She will need close and regular medical attention in order to keep a good quality of life.  Furthermore, it is very likely that she will need additional cardiac surgery to repair her mitral valve.

R. 291.

The Appeals Council denied review on February 27, 2014.  R. 1-6.

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.  <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole and, second, whether the Commissioner applied the proper legal standards to evaluate the evidence.  *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Audler*, 501 F.3d

at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is more than a mere scintilla and less than a preponderance.  *Id*.; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.  *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.  *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.  In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.  *Perez*,

415 F.3d at 461; *Masterson*, 309 F.3d at 272.

## IV.   ANALYSIS

### A.   Statutory Basis for Benefits

Social Security disability insurance benefits are authorized by Title II of the Social Security Act.  The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.  42 U.S.C. § 423(c) & (d).  "Disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

### B.   Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.  *Perez*,

415 F.3d at 461; *Newton*, 209 F.3d at 453.[3]  The claimant has the burden to prove

Disability under the first four steps.  *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

If the claimant successfully carries this burden, the burden shifts to the Commissioner

at Step Five to show that the claimant is capable of performing other substantial

gainful employment that is available in the national economy.  *Perez*, 415 F.3d at 461;

*Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.  Once the Commissioner

makes this showing, the burden shifts back to the claimant to rebut the finding.  *Perez*,

415 F.3d at 461; *Newton*, 209 F.3d at 453.  A finding that a claimant is disabled or is

not disabled at any point in the five-step review is conclusive and terminates the

analysis.  *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

In this case, the ALJ determined at Step One that Bond had not engaged in

substantial gainful activity since her alleged onset date of May 23, 2011.  At Step

Two, he found that Bond had six severe impairments:  COPD, coronary artery disease,

diabetes mellitus, peripheral vascular disease, sleep apnea, and obesity.  He concluded

that her rectal cancer and hyperlipidemia were not severe impairments.  At Step Three,

he found that Bond's impairments, considered singly or in combination, did not meet

---

[3]      The Commissioner's analysis at Steps Four and Five is based on the assessment of the
claimant's residual functional capacity ("RFC"), or the work a claimant still can do
despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The
Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

or medically equal an impairment listed in the Social Security regulations.

Before proceeding to Step Four, the ALJ considered Bond's residual functional capacity ("RFC") and concluded that Bond had the RFC to perform "sedentary work." Additionally, he determined that Bond needed to avoid fumes, odors, temperature extremes, and other environmental conditions; that she was limited to occupations not requiring exposure to dangerous machinery or unprotected heights; and that she was limited to "no more than occasional use of the ring finger and the little finger on the left non-dominant hand."  R. 34.

At Step Four, the ALJ determined that Bond was capable of performing her past relevant work as a travel agent.  He therefore concluded that she was not under a disability between May 23, 2011, through August 12, 2013, the date of his decision.

## C.    **Plaintiff's Arguments for Reversal**

Plaintiff argues that the ALJ failed adequately to consider the cumulative effect of her medical problems during 2011 and 2012 (including open heart surgery, subsequent stent placements and angioplasties, and colon cancer surgery) and the required recuperation time for her multiple medical procedures during the relevant period. Plaintiff also argues that the Appeals Council failed adequately to consider the medical opinions from Dr. Sidhu and Dr. Kunapuli, two of Bond's treating physicians.

As a preliminary matter, the evidence that Bond submitted to the Appeals Council is properly before this Court. Evidence submitted to the Appeals Council is part of the record before Commissioner and must be considered by this Court, even when the evidence was not presented to the ALJ. *Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005) (citing 42 U.S.C. § 405(g); 20 C.F.R. § 404.970(b)). As stated above, the statements from Bond's physicians were not before the ALJ but were submitted to the Appeals Council along with Bond's brief.[4]

Remand based on late-submitted evidence is appropriate only when the evidence is both ***new*** and ***material***. *See Ripley v. Chater*, 67 F.3d 552, 555-56 (5th Cir. 1995); *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987); *Avery v. Colvin*, 2015 WL 1192984, *5 (5th Cir. March 17, 2015); *Thomas v. Colvin*, 587 F. App'x 162, 165 (5th Cir. 2014).[5] In order to be material, the evidence must "relate to the

---

[4]     Bond's appellate brief and some new evidence, including the physician statements, is contained in Exhibit 14E in the administrative record. Nevertheless, the Appeals Council's opinion does not list the attachments to Bond's brief when listing the evidence it considered. *See* R. 1; R. 5 (listing Exhibits 15F and 16F). In reaching its opinion, the Appeals Council engaged in no analysis of any evidence, stating without elaboration that "we considered the reasons you disagree with the decision and the additional evidence [in Exhibits 15F and 16F]" and that "this information does not provide a basis for changing the [ALJ's] decision." R. 1-2. Nevertheless, all of the evidence in the administrative record is before this Court. *See Higginbotham*, 405 F.3d at 337-38.

[5]     *Ripley* and *Bradley*, which are reported cases, analyzed the effect of evidence obtained after the Appeals Council had rendered its decision and the Commissioner's
                                                                                                    (continued...)

time period for which benefits were denied," and not to a later-acquired disability or a subsequent deterioration of a previous condition. *Thomas*, 587 F. App'x at 165 (internal quotation marks and citations omitted). In addition, materiality requires a "reasonable probability that the new evidence would change the outcome" of the Commissioner's decision. *Ripley*, 67 F.3d at 555.[6] The question for the reviewing court is whether the record as a whole, including the new evidence, still contains substantial evidence supporting the Commissioner's findings. *Higginbotham v. Barnhart*, 163 F. App'x 279, 281–82 (5th Cir. 2006).

In this case, the late-submitted evidence was new, because it was submitted to the Appeals Council after the ALJ's ruling. It also pertained to the relevant time period, *i.e.*, between May 2011 and August 2013.

Regarding materiality and its requirement of a "reasonable probability" of a changed outcome, the opinions of Dr. Sidhu and Dr. Kunapuli are highly relevant to Bond's application for benefits because both physicians treated Bond during the

---

[5]     (...continued)
        determination was final. *Avery* and *Thomas* address evidence submitted to the
        Appeals Council after the ALJ's determination, as in the case at bar.

[6]     Other Fifth Circuit decisions articulate the materiality standard as requiring a
        "reasonable *possibility*" of a changed outcome. *See Thomas*, 587 F. App'x at 165
        (emphasis added) (citing *Bradley*, 809 F.2d at 1058). This discrepancy need not be
        resolved for disposition of the case at bar because, as held below, Bond has made the
        reasonable probability showing. It therefore follows that she could also make a
        showing of a reasonable possibility of a changed outcome.

entirety of the relevant period.[7]  Dr. Sidhu, Bond's primary care physician, opined that Bond was capable of sitting no more than two hours in an eight-hour workday.  This assessment conflicts directly with the RFC for sedentary work assessed by the ALJ, as well as with the ALJ's conclusion that Bond was capable of performing her past work as a travel agent. Dr. Sidhu also corroborated Bond's testimony that she had limited use of her left hand, and that she needed frequent rest breaks during the work day.[8]  These conditions further undermine Bond's ability to perform her work as a travel agent.[9]   In addition, Plaintiff's treating cardiologist, Dr. Kunapuli, submitted a letter in which he opined, based on his extensive treatment of Bond over two years, that her condition had declined, that she required "close and regular medical attention," and that in his opinion she was "not capable of returning to work."  R. 290-

---

[7]     A treating medical source's opinion is entitled to "controlling weight" if it is well-supported by clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  *See* 20 C.F.R. § 404.1527(c); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Giles v. Astrue*, 433 F. App'x 241, 246 (5th Cir. 2011); *Beasley v. Barnhart*, 191 F. App'x 331, 334 (5th Cir. 2006).

[8]     R. 292-294.  Dr. Sidhu stated that Bond required seven rest breaks during an eight-hour workday, lasting ten minutes each, due to back pain, hip pain, incontinence, and the need to minimize stress due to her heart condition.  R. 294.

[9]     *See also* R. 219-220 (Affidavit of Terry Bond, dated Dec. 30, 2013).   Bond's affidavit, which was submitted to the Appeals Council, stated that her past work as a travel agent required her to spend ninety per cent of her work time typing on her computer, which required use of all of her fingers, and that the work was stressful because she was expected to handle seven to eight client calls per hour.

291.

The ALJ did not have the benefit of these treating physicians' opinions when making his determination.  The record strongly suggests that opinion evidence would have affected the ALJ's perspective on the evidence.  The ALJ's written opinion explicitly noted the absence of such evidence.  R. 38 ("No treating physician has expressed an opinion regarding the claimant's ability to perform work related functions during the period at issue.").[10] His opinion also explicitly rejected Plaintiff's counsel's hypothetical involving a worker "who required a break from sitting every 30 minutes" or who "required bathroom breaks seven to eight times due to colon problems," on the basis that such limitations were "not supported by the record."  R. 38.   However, Dr. Sidhu's opinion provides explicit support for both of these limitations.

Because the opinions from both of Bond's physicians provide direct and weighty support for some of her alleged limitations that erode her ability to perform her past relevant work, the Court thus concludes that this new evidence provides a

---

[10]    At the administrative hearing, the ALJ noted the importance of a complete record and urged counsel to collect all relevant records, stating that he would hold the record open for an additional fourteen days to allow supplementation. R. 61-64. Plaintiff did not, however, submit any additional evidence within the allotted period.

"reasonable probability" of a changed outcome and therefore was material.[11]  This

case is remanded to the Commissioner for consideration of the complete record in

accordance with the holdings herein.  *See Higginbotham*, 163 F. App'x at 281–82.

## V.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Summary Judgment Motion [Doc. # 12] is

**GRANTED**.  It is further

**ORDERED** that Defendant's request for summary judgment [Doc. # 13] is

**DENIED**.

A separate Order of Remand will issue.

SIGNED at Houston, Texas, this 12th  day of **June, 2015**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

[11]    Moreover, the opinions from Dr. Sidhu and Dr. Kunapuli provide additional support for Plaintiff's argument that she was unable to maintain employment due to the combined effect of her multiple health problems during the relevant period, which led to hospitalizations for bypass surgery, colon cancer surgery, and angioplasties; numerous outpatient procedures and therapies, including chemotherapy and occupational therapy; and time for recuperation from multiple surgeries.  *See Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000) (in making determination of disability, the ALJ must analyze the combined effect of all of a claimant's impairments).